Leib M. Lerner (Cal. Bar No. 227323)
Douglas J. Harris (Cal. Bar No. 329946)
**ALSTON & BIRD LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone:   (213) 576-1000
Facsimile:   (213) 576-1100
E-mail: leib.lerner@alston.com
         douglas.harris@alston.com

*Counsel for Clear Street LLC*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| Clear Street LLC,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>Liminatus Pharma, Inc.,<br><br>　　　　Defendant. | Case No. 8:25-mc-00024-UA<br><br>**DECLARATION OF DOUGLAS J. HARRIS IN SUPPORT OF APPLICATION FOR APPEARANCE AND EXAMINATION**<br><br>Case Filed:　　　　October 22, 2025 |

1

# DECLARATION OF DOUGLAS J. HARRIS

1. I am an attorney duly licensed to practice law before all courts of the State of California and am an associate with the law firm of Alston & Bird LLP, attorneys of record herein for Clear Street LLC (the "Judgment Creditor").

2. I make this declaration in support of Judgment Creditor's Application for Appearance and Examination of third-party Chris Kim (the "Application").

3. On September 11, 2025, the United States District Court for the Southern District of New York entered a judgment in favor of Judgment Creditor and against Liminatus Pharma, Inc (the "Judgment Debtor") in the amount of $7,730,201.40, in that certain case styled as *Clear Street LLC v. Liminatus Pharma, Inc*. (Case No. 1:25-cv-05504-DLC) (the "Judgment").

4. On October 22, 2025, Judgment Creditor registered the Judgment in this Court.

5. To date, Judgment Creditor has recovered no money to satisfy the Judgment.

6. Judgment Creditor is informed and believes that Chris Kim was the Chief Executive Officer of Judgment Debtor at all material times. Judgment Creditor is further informed and believes that Chris Kim remains in possession or control of relevant documents and/or information regarding Judgment Debtor, valued over $250, in which Judgment Debtor has an interest, which Judgment Creditor needs in aid of enforcement. Judgment Creditor has not previously examined Judgment Debtor or Chris Kim, who Judgment Creditor believes is in possession or control of these relevant documents and information.

7. It is necessary for Judgment Creditor to ascertain Judgment Debtor's assets, and any recoverable transference of those assets in an attempt to satisfy the Judgment.

8. Judgment Creditors request this Court to issue an Order for Appearance and Examination ("Order"), the form of which is attached to the Application, requiring Chris Kim to appear and produce documents in his possession and control at a time, place and date as set by this Court for an examination by Judgment Creditor' counsel regarding information and documents of Judgment Debtor in his possession and control pursuant to California Code of Civil Procedure § 708.120.

1    9.  Judgment Creditor's counsel will serve a subpoena duces tecum to produce documents at the examination as provided by California Code of Civil Procedure § 1985. The Civil Subpoena Duces Tecum that Judgment Creditor will serve upon issuance of the Order is attached hereto as **Exhibit 1**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 30, 2025.

                                                                     */s/ Douglas J. Harris*
                                                                        Douglas J. Harris

# EXHIBIT 1

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Central District of California

| Clear Street LLC | ) |  |
|---|---|---|
| *Plaintiff* | ) |  |
| v. | ) | Civil Action No. 8:25-mc-00024 |
| Liminatus Pharma, Inc. | ) |  |
|  | ) |  |
| *Defendant* | ) |  |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Chris Kim

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment A.

| Place: ALSTON & BIRD LLP, Attn. Douglas J. Harris<br>350 South Grand Avenue, 51st Floor<br>Los Angeles, CA 90071 | Date and Time: |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

*CLERK OF COURT*

OR

_____    _____
*Signature of Clerk or Deputy Clerk*         *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Clear Street LLC , who issues or requests this subpoena, are:

Alston & Bird LLP, Douglas J. Harris, 350 S. Grand Ave. 51st Floor, Los Angeles, CA 90071; douglas.harris@alston.com

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 8:25-mc-00024

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

# ATTACHMENT A

This attachment accompanies a Civil Subpoena (Duces Tecum) for Personal Appearance and Production of Documents, which commands the production of certain DOCUMENTS. This Attachment explains the nature of the DOCUMENTS requested. Please refer to the definitions sections below to clarify the meaning of the terms used in this attachment.

## DEFINITIONS

The following definitions shall apply to the documents requested below.

1. The terms "COMMUNICATIONS" shall mean and refer to both written and oral communications, including the transmission or exchange of any kind of DOCUMENT or DOCUMENTS, including, without limitation, face-to-face conversations, meetings, telephone conversations, voice mail messages, electronic mail, facsimile transmissions and any other method of communication.

2. The terms "DOCUMENT" or "DOCUMENTS" shall mean and include all materials within the full scope of Rule 34 of the Federal Rules of Civil Procedure and includes any written, printed, typed, or other graphic matter of any kind or nature, however produced or reproduced, whether or not sent or received, wherever located, including drafts and copies bearing notations, or marks not found on the original and includes, but is not limited to, all memoranda, inter-office communications, electronic mail ("emails"), Board minutes, Board materials, invoices, reports, financial reports, balance sheets, profits and loss statements, notes, transcripts, letters, social media posts, messages (including text, instant, Bloomberg chats, sound recordings of any type and memoranda of or relating to telephone conversations, and oral communication), studies, analyses, evaluations, projections, accounts, work papers, statements, summaries, opinions, ledgers, journals, statistical records, questionnaires, drawings, surveys, charts, graphs, magazines, newspapers, booklets, circulars, bulletins, notices, minutes or transcripts of meetings, contracts, licenses, agreements, expense account reports, receipts, written Communications of any type, disks, printouts, and other data compilations from which information can be obtained and any and all tangible matters of whatever description. The word "DOCUMENT" specifically includes, but is not limited to, all electronically stored information ("ESI"), as that term is defined and interpreted under Rule 7034 of the Federal Rules of Bankruptcy Procedure. ESI includes, but is not limited to, any type of information that can be stored electronically in any type of hardware, is intended to be broad enough to

cover all current types of computer-based information and includes, but is not limited to, information stored on employees' computers or laptops, the company's servers and network drives, home computers, backup storage media such as CDs, DVDs, USBs, or external hard drives, and hand-held devices such as iPhones. The information can be created from any type of program, such as Word, Excel files, PowerPoint presentations, emails, PDF files, and/or video or audio recordings, databases, etc. All designated Documents are to include all attachments and enclosures.

      3.      The term "LIMINATUS" shall refer to defendant and judgment debtor Liminatus Pharma, Inc., and shall further be defined to include all present and former subsidiaries, affiliates, divisions, and predecessor entities, including but not limited to, Iris Parent Holding Corp., Iris Acquisition Corp., Liminatus Pharma, LLC, Liminatus Merger Sub, Inc., SPAC Merger Sub, Inc., and Tribe Capital Growth Corp I, and all officers, directors, managing agents or other persons who are familiar with the property and debts of LIMINATUS. This definition also includes any entity that was merged with, consolidated into, or otherwise became part of Liminatus Pharma, Inc. as a result of the business combination consummated on or about April 30, 2025, and any entity for which Liminatus Pharma, Inc. is the successor-in-interest.

      4.      The term "PERSON" shall mean any natural person or any business, firm, association, organization, joint venture, partnership, corporation, any legal or governmental entity, or any other organization or entity.

      5.      "REFLECT, REFER AND/OR RELATE TO" and "REFLECTS, REFERS AND/OR RELATES TO" shall mean and include mentioning, discussing, summarizing, analyzing, depicting, describing, concerning, pertaining to, comprising, constituting, evidencing, arising out of, in connection with or involving a transaction or a course of dealing with or about the subject.

      6.      The terms "YOU" and "YOUR" shall mean Chris Kim, Chief Executive Officer and registered agent of Liminatus Pharma, Inc., including any actions taken, communications made, or documents held by YOU in either or both of those roles.

## INSTRUCTIONS

      A.      Produce all DOCUMENTS in YOUR possession, custody, or control, as well as all DOCUMENTS in the possession, custody, or control of YOUR officers, directors, managing agents,

agents, representatives, attorneys, investigators, consultants, independent contractors, experts or other persons who are familiar with YOUR property and debts.

     B.     Produce each and every copy where such copy contains any commentary or notation that does not appear on the original.

     C.     Produce all drafts, as well as the final version, of all responsive DOCUMENTS.

     D.     Produce, where possible, originals of the DOCUMENTS requested, whether signed or unsigned, for inspection and copying.

     E.     For each DOCUMENT requested which is sought to be withheld under a claim of privilege, provide the following information:

          1.     The number of the request to which the DOCUMENT is responsive;

          2.     A statement of the basis upon which the privilege is claimed and whether or not the subject matter of the contents of the DOCUMENT is limited to legal advice or information provided for the purpose of securing legal advice;

          3.     The name and title of the sender and the name and title of the recipient of the DOCUMENT, if applicable;

          4.     The place, approximate date, and manner of recording or otherwise preparing the DOCUMENT;

          5.     The name of each person or persons participating in the preparation of the DOCUMENT;

          6.     The name and title, if any, of each person to whom the contents of the DOCUMENT have heretofore been communicated by copy, exhibition, reading or substantial summarization.

     F.     For all DOCUMENTS that are produced in electronic format and password protected, please produce the passwords necessary to access the DOCUMENTS.

## DOCUMENT REQUESTS

1.     Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO all accounting records of LIMINATUS from January 1, 2020 to the present, including but not limited to accounting books, records, journals and registers, whether computerized, electronic and/or in printed paper format.

2. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO all bank account statements of LIMINATUS from January 1, 2020 to the present, including but not limited to statements for any and all savings accounts, checking accounts, payroll accounts, money market accounts, trust accounts, retirement accounts, profit sharing accounts, cryptocurrency accounts, or accounts with any securities brokerage firm or related type of entity.

3. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO all canceled checks, duplicate deposit slips, checkbooks, checkbook stubs, check registers, deposit registers, bank debit and credit memos, bank certificates, passbooks and savings-books, and safe or safety deposit box records of LIMINATUS, and related correspondence, from January 1, 2020 to the present.

4. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO all canceled checks, duplicate deposit slips, checkbooks, checkbook stubs, check registers, deposit registers, bank debit and credit memos, bank certificates, passbooks and savings-books, and safe or safety deposit box records in YOUR name in place of LIMINATUS, and related correspondence, from January 1, 2020 to the present.

5. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO all stock, bonds, other securities and/or mutual funds, and the location of cash or cash equivalents, owned by, on behalf of, or for the benefit of LIMINATUS, including any such DOCUMENTS with YOUR name in place of LIMINATUS, from January 1, 2020 to the present.

6. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO any shares of stock or ownership interests, warrants, options, or convertible securities issued to anyone, currently held by anyone, or exercised, transferred, or sold by LIMINATUS from January 1, 2020 to present.

7. All documents sufficient to show whether LIMINATUS currently owns or has previously owned any stocks, bonds, partnership interests, membership interests, warrants, options, convertible securities, or any other financial investments in any other corporation, partnership, limited liability company, or business entity, from January 1, 2020 to present. This includes, but is not limited to, account statements, purchase or sale agreements, certificates of ownership, communications regarding such investments, and records of dividends, interest, or other income received from such investments.

8. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO all fixed assets owned by, on behalf of, or for the benefit of LIMINATUS from January 1, 2020 to the present.

9. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO all inventory owned by, on behalf of, or for the benefit of LIMINATUS from January 1, 2020 to the present.

10. Any and all balance sheets, quarterly and/or annual profit and loss reports, accounts payable records, accounts receivable records prepared by, on behalf of, or for the benefit of LIMINATUS from January 1, 2020 to the present.

11. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO all current or short-term assets currently owned by, on behalf of, or for the benefit of LIMINATUS.

12. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO any encumbrances, liens, or security interests on any financial assets of LIMINATUS from January 1, 2020 to present.

13. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO any real property, vehicles, equipment, or other tangible assets owned by, on behalf of, or for the benefit of LIMINATUS from January 1, 2020 to present.

14. All insurance policies, including those covering property, liability, directors and officers, or intellectual property, owned by, on behalf of, or for the benefit of LIMINATUS from January 1, 2020 to present.

15. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO any dividends, distributions, or other payments made to shareholders, members, directors, officers, or affiliates by LIMINATUS from January 1, 2020 to present.

16. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO any patents, patent applications, copyrights, trademarks, trade secrets, or other intellectual property owned, licensed, or controlled by LIMINATUS from January 1, 2020 to present.

17. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO all license agreements, assignments, or other contracts relating to intellectual property rights held, acquired, or disposed of by LIMINATUS since January 1, 2020.

18. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO any royalty income, royalty payments, or other revenue streams derived from intellectual property, including any chimeric antigen receptor ("CAR-T") products, vaccine products, companion diagnostics used to monitor

vaccine treatment, CD47 ("CD47") immune checkpoint inhibitors, and companion diagnostics used to monitor treatment with CD47 products received by LIMINATUS from January 1, 2020 to present.

19. Any and all COMMUNICATIONS between LIMINATUS, on the one hand, and Targeted Diagnostics & Therapeutics, Inc. ("TDT") or InnoBation, on the other hand, that REFLECT, REFER AND/OR RELATE TO intellectual property, license agreements, or royalty payments, from January 1, 2020 to present.

20. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO any capital contributions, investments, loans, or other financial infusions from management, directors, officers, or private investors to LIMINATUS from January 1, 2020 to present.

21. All promissory notes, loan agreements, or other evidence of indebtedness issued to or by management, directors, officers, or private investors of LIMINATUS from January 1, 2020 to present.

22. Any and all DOCUMENTS, subscription agreements, or investor questionnaires, that REFLECT, REFER AND/OR RELATE TO any PIPE investment completed by LIMINATUS from January 1, 2020 to present.

23. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO any PIPE investment, including closing binders, wire confirmations, board resolutions, and communications with investors, involving LIMINATUS from January 1, 2020 to present.

24. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO the identity, amount, and terms of any PIPE investors, including Prophase Sciences, LLC, Feelux Co, Ltd., Car-Tcellkor, Inc., Valetudo Therapeutics LLC, Ewon Comfortech Co., Ltd., Hana Immunotherapeutics, LLC, and Amantes LLC, in relation to LIMINATUS from January 1, 2020 to present.

25. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO the use, allocation, or disposition of PIPE proceeds, including payments to creditors, vendors, or affiliates, by LIMINATUS from January 1, 2020 to present.

26. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO the use, allocation, or disposition of PIPE proceeds, including payments to creditors, vendors, or affiliates, by LIMINATUS from January 1, 2020 to present.

27. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO the

conversion of debt to equity, including any related party debt converted into common stock in connection with any business combination, by LIMINATUS from January 1, 2020 to present.

28. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO any regulatory filings, SEC correspondence, or disclosures regarding PIPE transactions by LIMINATUS from January 1, 2020 to present.

29. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO the Memorandum of Understanding with Capital Trust Group Limited.

30. Any and all DOCUMENTS which REFLECT, REFER AND/OR RELATE TO any entities, including corporations, limited liability companies, limited partnerships, business trusts, trusts or affiliates of any nature, in which (i) LIMINATUS and/or (ii) YOU together with LIMINATUS currently has any ownership or financial interest or otherwise controls.

31. Any and all DOCUMENTS which REFLECT, REFER AND/OR RELATE TO any contracts or other agreements to which LIMINATUS is a party, guarantor or beneficiary, in effect at any time from January 1, 2020 to the present.

32. Any and all DOCUMENTS which REFLECT, REFER AND/OR RELATE TO any loans between any PERSON and LIMINATUS that were outstanding in whole or in part on or after January 1, 2020, and/or any payment between LIMINATUS and any PERSON on account of any such loans.

33. Any and all DOCUMENTS and COMMUNICATIONS which REFLECT, REFER AND/OR RELATE TO any transfer of assets exceeding a value of $10,000 between LIMINATUS and any PERSON, including any company in which LIMINATUS has any ownership or financial interest or otherwise controls, from January 1, 2020 to the present, including but not limited to any transfer of money, real property, personal property, equity interests, stock, bonds, options, or option rights.

34. Any and all DOCUMENTS and COMMUNICATIONS which REFLECT, REFER AND/OR RELATE TO any proposal, agreement, or promise by any PERSON, to pay the expenses for the LIMINATUS since January 1, 2020.

35. Any and all DOCUMENTS and COMMUNICATIONS which REFLECT, REFER AND/OR RELATE TO the transfer or assignment of any contractual rights of LIMINATUS to another PERSON, from January 1, 2020 to the present.

36. Any and all DOCUMENTS which REFLECT, REFER AND/OR RELATE TO the LIMINATUS' flow of funds of income and expenses from January 1, 2020 to the present.

37. Any and all DOCUMENTS which REFLECT, REFER AND/OR RELATE TO any payments or transfer of assets between LIMINATUS and Viral Gene from January 1, 2020 to the present.

38. Any and all DOCUMENTS and COMMUNICATIONS which REFLECT, REFER AND/OR RELATE TO any reason why LIMINATUS is not able to satisfy the judgment against LIMINATUS in this litigation.

39. Any and all DOCUMENTS and COMMUNICATIONS which REFLECT, REFER AND/OR RELATE TO any reason why the judgment against LIMINATUS should not be enforced.

40. Any and all DOCUMENTS which REFLECT, REFER AND/OR RELATE TO the identity of all PERSONS who have a 5.0% or more ownership interest in LIMINATUS, including the nature and extent of the interest or control and last known contact information for such PERSONS.

41. Any and all DOCUMENTS and COMMUNICATIONS which REFLECT, REFER AND/OR RELATE TO any change made to the officers, directors, and/or the organizational structure of LIMINATUS since January 1, 2020.

42. LIMINATUS' federal tax returns for 2020, 2021, 2022, 2023, and 2024.

43. LIMINATUS' yearly balance statements for 2020, 2021, 2022, 2023, and 2024.

44. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO any transfer of money, assets, or property from YOU to LIMINATUS from January 1, 2020 to present.

45. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO any transfer of money, assets, or property from LIMINATUS to YOU, from January 1, 2020 to present.

46. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO any loans, promissory notes, or other indebtedness between YOU and LIMINATUS from January 1, 2020 to present.

47. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO any capital contributions, investments, or equity infusions made by YOU to LIMINATUS from January 1, 2020 to present.

48. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO any repayment, reimbursement, or return of capital from LIMINATUS to YOU, from January 1, 2020 to

present.

49. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO any ownership interest, stock, warrants, options, or convertible securities held by YOU in LIMINATUS from January 1, 2020 to present.

50. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO any transfer, sale, or assignment of ownership interests, stock, warrants, options, or convertible securities by YOU in LIMINATUS from January 1, 2020 to present.

51. All agreements, contracts, or memoranda of understanding between YOU and LIMINATUS regarding financial transactions, investments, or asset transfers, from January 1, 2020 to present.

52. Any and all COMMUNICATIONS between YOU and any PERSON regarding the movement of funds or assets to or from LIMINATUS from January 1, 2020 to present.

53. Any and all DOCUMENTS and COMMUNICATIONS that REFLECT, REFER AND/OR RELATE TO any transfer exceeding $10,000 between any account held by YOU and any account held by LIMINATUS from January 1, 2020 to present.

54. Any and all DOCUMENTS and COMMUNICATIONS that REFLECT, REFER AND/OR RELATE TO any financial transactions between YOU and any entity in which LIMINATUS holds an ownership interest, from January 1, 2020 to present.

55. Any and all DOCUMENTS and COMMUNICATIONS that REFLECT, REFER AND/OR RELATE TO any financial transactions between YOU and any entity that is a vendor, creditor, or debtor of LIMINATUS from January 1, 2020 to present.

56. Any and all DOCUMENTS and COMMUNICATIONS that REFLECT, REFER AND/OR RELATE TO any compensation, bonuses, expense reimbursements, dividends, distributions, or other payments received by YOU from LIMINATUS from January 1, 2020 to present.

57. Any and all DOCUMENTS and COMMUNICATIONS that REFLECT, REFER AND/OR RELATE TO any deferred compensation, retirement benefits, or other future payments owed to YOU by LIMINATUS.

58. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO any

guarantees, indemnities, or sureties provided by YOU for the benefit of LIMINATUS, or any of its subsidiaries, affiliates, or predecessor entities.

59. Any and all DOCUMENTS that REFLECT, REFER AND/OR RELATE TO any settlement agreements, releases, or payments made or received by YOU in connection with any dispute involving LIMINATUS, or any of its subsidiaries, affiliates, or predecessor entities.